UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AGEEG ABRAHAM RUAL,

      Petitioner,

v.

WILLIAM BARR, United States Attorney General, *et al.*,

      Respondents.

**DECISION AND ORDER**

6:20-CV-06215 EAW

---

# **INTRODUCTION**

Petitioner Ageeg Abraham Rual ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that his continued detention violates his right to due process and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001), because his removal is not significantly likely to occur in the reasonably foreseeable future. (*Id.*). For the reasons that follow, the Court finds that Petitioner has met his initial burden of demonstrating that there is good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, and that the burden has thus shifted to Respondents to rebut this showing. The Court further grants Respondents an opportunity to supplement their submissions by no later than July 24, 2020.

## BACKGROUND

**I.      Factual Background**

Petitioner is a native and citizen of Sudan. (Dkt. 5-1 at ¶ 5). He entered the United States as a refugee on September 11, 2000. (*Id.*). Petitioner applied to become a lawful permanent resident of the United States in April 2005, but his application was denied on June 6, 2006, because he never appeared to have his fingerprints taken. (*Id.* at ¶ 6).

On April 19, 2018, a warrant was issued for Petitioner's arrest. (*Id.* at ¶ 7). Petitioner was apprehended on January 25, 2019, and determined to be a refugee who had not adjusted his immigration status and had been convicted of "numerous crimes, including criminal contempt, and violating protection orders issued against him." (*Id.* at ¶ 8).

Removal proceedings were instituted against Petitioner on or about February 13, 2019. (*Id.* at ¶ 9). On July 8, 2019, an immigration judge ("IJ") denied Petitioner's applications for relief and ordered him removed from the United States. (*Id.* at ¶ 15). Petitioner did not appeal the IJ's decision and his order of removal became administratively final on August 8, 2019. (*Id.* at ¶ 17).

A warrant of removal/deportation was issued as to Petitioner, and a presentation packet was prepared for transmission to the Embassy of the Republic of South Sudan (the "Embassy") so that travel documents could be obtained for Petitioner's removal. (*Id.* at ¶ 16). On October 24, 2019, the Embassy advised Immigrations and Customs Enforcement ("ICE") that it was prepared to issue travel documents, but required additional photographs to facilitate the request. (*Id.* at ¶ 18). The necessary photographs were returned the same day. (*Id.*).

On October 29, 2019, ICE advised Petitioner that travel documents were anticipated from the government of South Sudan "within a few weeks." (*Id*. at ¶ 20). ICE reviewed Petitioner's custody status on November 21, 2019, and determined that he should remain in custody pending his removal. (*Id.* at ¶ 21).

In late November of 2019, the Embassy requested a new presentation packet, because it could not locate the original request submitted by ICE. (*Id*. at ¶ 22). The new presentation packet was sent on December 2, 2019. (*Id*. at ¶ 23).

ICE reviewed Petitioner's detention status in February of 2020, and again determined that he should not be released from custody. (*Id*. at ¶ 28). On February 27, 2020, Petitioner was interviewed by the Embassy in relation to the request for travel documents. (*Id*. at ¶ 29).

ICE requested updates regarding the status of Petitioner's travel documents on March 12, 2020, and April 9, 2020. (*Id*. at ¶ 30). On April 9, 2020, ICE learned that the Embassy had closed due to the COVID-19 pandemic. (*Id*.). The Embassy remains closed as of the date of the latest filings in this case. (*Id.*; *see also* Dkt. 11).

Under normal circumstances, there are no institutional bars to the removal of aliens to South Sudan. In fiscal year 2018, ICE removed 61 aliens to South Sudan. (Dkt. 5-1 at ¶ 32).

## II.    Procedural Background

Petitioner filed his Petition *pro se* on April 6, 2020. (Dkt. 1). Respondents filed their Answer and Return in Response to the Petition on May 28, 2020. (Dkt. 5). Petitioner initially filed a *pro se* reply on June 8, 2020 (Dkt. 8), but counsel appeared on his behalf

and requested withdrawal of the *pro se* reply (Dkt. 9), which request was granted by the Court on June 19, 2020 (Dkt. 10). Petitioner's counseled reply was filed on June 26, 2020. (Dkt. 11).

## DISCUSSION

### I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

### II. Legal Framework

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the Government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id*.

In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.  It does not permit indefinite detention."  533 U.S. at 689.  The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.* at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003)  ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

### III.     Petitioner has Satisfied his Initial Burden

As noted above, Petitioner bears the initial burden to demonstrate that there is good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future.  *See Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017) (noting that *Zadvydas* "places an initial burden on the detainee").  "In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien."  *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL

78984, at *4 (W.D.N.Y. Jan. 2, 2019).  Further, "[w]hat constitutes the 'reasonably foreseeable future' will depend on the length of detention." *Id.*; *see Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.").  "In effect, the parties' respective burdens shift as the length of detention increases." *Hassoun*, 2019 WL 78984, at *4.

Here, Petitioner's 90-day removal period began on August 8, 2019, when his order of removal became administratively final, *see* 8 U.S.C. § 1231(a)(1)(B)(i)[1], and expired on November 6, 2019.  The 6-month presumptively reasonable period of detention has thus also expired.  Accordingly, the Court must assess whether Petitioner has demonstrated good reason to believe that there is not a significant likelihood of his removal in the reasonably foreseeable future.

"Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (citations, quotations, and alterations omitted), *appeal withdrawn*, No. 19-3333, 2020 WL 1862195 (2d Cir. Feb. 6, 2020).  In particular, "the passage of time combined with" the "government [being] no closer to . . . repatriating [a detainee] than they

---

[1] The 90-day removal period can be suspended pursuant to 8 U.S.C. § 1231(a)(1)(C) "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id*.  There is no claim in this case that Petitioner engaged in such behavior.

were once they first took him into custody" is sufficient to satisfy Petitioner's initial burden. *Singh v. Whitaker*, 362 F. Supp. 3d. 93, 102-03 (W.D.N.Y. 2019).

In this case, the record before the Court establishes the following facts: (1) Petitioner cannot be removed to South Sudan without travel documents; (2) the necessary travel documents cannot be obtained because the Embassy is closed due to the COVID-19 pandemic; and (3) there is no set timeframe in which the Embassy is expected to reopen. Indeed, Respondents acknowledge that it is "impossible to judge when the Embassy [will] reopen[.]" (Dkt. 5-4 at 8). This is sufficient to satisfy Petitioner's initial burden and to demonstrate that there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *See Ali v. Dep't of Homeland Sec.*, No. 4:20-CV-0140, 2020 WL 1666074, at *3 (S.D. Tex. Apr. 2, 2020) ("Given the current travel restrictions in place at the moment in both the United States and Pakistan, and given the speed and unpredictability with which the global pandemic has been spreading, the Government has sensibly halted attempts to obtain a flight itinerary or a date of removal for Petitioner. As the situation worsens both in the United States and in Pakistan and government extend restrictive measures accordingly, there is no significant likelihood that the Government will be able to remove Petitioner to Pakistan in the foreseeable future.").

**IV.     Respondents will be Permitted to Supplement their Submissions**

The Court finds that, at this time, Respondents have failed to rebut Petitioner's showing. Respondents argue that "[t]ravel documents are expected to issue once the Embassy of South Sudan reopens." (Dkt. 5-4 at 11). However, Respondents have provided the Court with no information whatsoever as the status of the pandemic in South Sudan or

any anticipated time frame for the potential reopening of the Embassy. To the contrary, as noted above, Respondents have conceded that there is no knowing, at this point in time, when the Embassy might reopen. As such, "this Court is left to guess whether [Petitioner's] deportation might occur in ten days, ten months, or ten years." *Singh*, 362 F. Supp. 3d at 102.

Further, while the Court does not find that this is "a case where the government has been dilatory in its attempts to effectuate removal," *Hassoun*, 2019 WL 78984, at *5, that is not determinative. "[U]nder *Zadvydas*, the reasonableness of Petitioner's detention does not turn on the degree of the government's good faith efforts. Indeed, the *Zadvydas* court explicitly rejected such a standard." *Id.* The government's active efforts to obtain travel documents from the Embassy are not enough to demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the Court contains no information to suggest a timeline on which such documents will actually be issued. *See id.* at *6. ("[D]etention may not be justified on the basis that removal to a particular country is likely at some point in the future; *Zadvydas* permits continued detention only insofar as removal is likely in the reasonably foreseeable future.").

However, given the procedural posture of this case, the Court finds it appropriate to afford Respondents an opportunity to supplement their submissions before making a final determination. In particular, the Court notes that the original *pro se* Petition, to which Respondents filed their opposition, is devoid of meaningful factual allegations and did not fully inform Respondents of the basis for Petitioner's claims. It was not until the counseled reply was filed that Petitioner's arguments were fully fleshed out. Respondents have not

had an opportunity to respond to the arguments made in the counseled reply, and the Court concludes that such an opportunity is warranted, to ensure that the Court's final determination is based on an appropriately developed record.

The Court thus instructs Respondents to file any supplement to their opposition to the Petition by no later than July 24, 2020. The Court is particularly interested in any information Respondents possess regarding the anticipated duration of the Embassy's closure and the potential for obtaining travel documents on an emergency basis. *See Senor*, 401 F. Supp. 3d at 432 (giving the government the opportunity to submit "evidence specific to [the petitioner's] case," which "might include correspondence from Haitian officials indicating that they are moving swiftly to provide [the petitioner] with travel documents or explaining reasons for the delay that appear to be resolved or resolvable," or a well-supported estimated date by which repatriation is expected to occur). The Court does not require additional briefing regarding the government's pre-COVID-19 efforts to remove Petitioner.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that Petitioner has met his initial burden of demonstrating that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The Court grants Respondents an opportunity to supplement their submissions by no later than July 24, 2020, in an attempt to rebut that showing.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   July 14, 2020
         Rochester, New York